IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

FOREST GUARDIANS,

        Plaintiff,

vs.                                                             No. CV 00-490 JP/RLP

UNITED STATES FOREST SERVICE and
DANIEL GLICKMAN, in his capacity As
Secretary of Agriculture of the United States,

        Defendants.

## MEMORANDUM OPINION AND ORDER

There are two (2) pending motions to intervene that have been fully briefed:[1] (1) Sacramento Grazing Association's Motion Under Rule 24 To Intervene As Defendant, filed June 23, 2000 (Doc. No. 10); and (2) Calvin Bishop, Sam Fairchild, Randy Elkins, Grant Myers, Rick and Kim Lessentine, and Roy Holcomb's Motion To Intervene As Defendant, filed June 30, 2000 (Doc. No. 12). After carefully considering the briefs, the pleadings, the exhibits, and the applicable law, I conclude that the Motions should be GRANTED.

### I. BACKGROUND

This lawsuit was filed by Forest Guardians, a conservation organization, against

---

[1] A third motion to intervene is pending but is not fully briefed: Otero County's Motion To Intervene As Defendant, filed August 10, 2000 (Doc. No. 27). That motion will be the subject of a subsequent memorandum opinion and order.

the United States Forest Service, and against Daniel Glickman, Secretary of the Department of Agriculture. The Forest Service is an agency of the United States Department of Agriculture with responsibility for management of national forest lands, and the Secretary is charged with managing national forest lands and with taking steps to protect and conserve threatened and endangered species. Forest Guardians seeks to stop alleged overgrazing on certain grazing allotments in the Lincoln National Forest in south-central New Mexico. This area is a key population center for the Mexican spotted owl and is the only known habitat for the Sacramento prickly poppy.

Forest Guardians seeks a declaratory judgment that the Forest Service's actions violate the Endangered Species Act, 16 U.S.C. §§ 1531 to 1544 ("ESA"), the National Forest Management Act, 16 U.S.C. §§ 1600 to 1614 ("NFMA"), and the Administrative Procedure Act, 5 U.S.C. §§ 551 to 706 ("APA"). It also seeks injunctive relief requiring the Forest Service to prevent further harm to the Mexican spotted owl and the Sacramento prickly poppy and their habitat.

The Complaint alleges that in 1993 the Mexican spotted owl was listed by the United States Fish and Wildlife Service ("FWS") as a threatened species under the ESA. In 1995 FWS published a Recovery Plan to promote the recovery of the species. The Recovery Plan indicates that livestock grazing is a major threat to the population of Mexican spotted owls found in the Sacramento Mountains. There are eight (8) grazing allotments located in the area, namely Sacramento, Agua Chiquita, EK/North Bluewater, Hyatt, Perk, Piñon, Pumphouse, and Scott Able. All allegedly contain Protected Activity

Centers for the Mexican spotted owl.

In 1989 FWS listed the Sacramento prickly poppy as an endangered species under the ESA. Approximately 80% of the known Sacramento prickly poppy populations occur in the Lincoln National Forest, with many concentrated within the Sacramento grazing allotment. The poppy is also reportedly vulnerable to damage from livestock grazing.

The Complaint alleges that Section 7 of the ESA requires that the Forest Service consult formally with FWS whenever it undertakes activities that may adversely affect threatened and endangered species. The NFMA requires that the Forest Service prepare long range land resource management plans, also called Forest Plans, which govern activities, including livestock grazing, in all national forests. Grazing is usually carried out under the terms of 10-year grazing permits issued by the Forest Service which set the overall terms under which grazing may be carried out, including the number of cattle that can be grazed on a given allotment. The grazing permits are implemented on a year to year basis through allotment management plans ("AMPs") and annual operating plans ("AOPs"), the terms of which must be consistent with the standards in the Forest Plan.

The Complaint alleges that in 1996 the Forest Plan for Lincoln National Forest was amended to include measures to protect the Mexican spotted owl and other species. According to the amendments, the Forest Service was required to implement standards on grazing allotments to protect the owl's habitat and its prey base and to restore riparian systems. These standards limit forage consumption by domestic livestock to account for consumption by wild foragers such as deer and elk, while leaving enough vegetation to

recover threatened and endangered species.  Typically on these allotments consumption by all foragers, domestic and wild, is limited to about 35% of the available forage.  The 1996 amendments apply to the issuance or reissuance of all future permits.

The Complaint further alleges that the Forest Service requested formal consultation with FWS to determine whether the 1996 amendments to the Forest Plan would adequately fulfill its obligations under the ESA, given the listing of the Mexican spotted owl.  In November 1996, the FWS issued two Biological Opinions ("BOs"), one determining that livestock grazing under the terms of the 1996 amendments would not jeopardize the Mexican spotted owl because that Forest Plan contained needed protections.  The second BO determined that continuation of existing projects that predated the 1996 amendments to the Forest Plan would jeopardize the species.  Both BOs addressed only programmatic level activities, not site-specific grazing actions.

Then in 1998 and 1999 the Forest Service issued a series of site-specific Biological Assessments (BAs") for the eight allotments covered by this lawsuit evaluating the impacts of cattle grazing on the Mexican spotted owl and the Sacramento prickly poppy.  In the BA for the Sacramento allotment, the Forest Service found that continuing cattle grazing at present levels "may affect" and is "likely to adversely affect" both the Mexican spotted owl and the Sacramento prickly poppy.  In the BAs for the Agua Chiquita, EK/North Bluewater, Hyatt, Perk, Piñon, Pumphouse, and Scott Able allotments, the Forest Service determined that continued cattle grazing "may affect" but is "not likely to adversely affect" the Mexican spotted owl.  In each BA the Forest Service

specifically based its determinations on the assumption that cattle grazing would not exceed allowable utilization limits on any of the allotments.

The Complaint alleges that contrary to the Forest Service's assumption, ongoing cattle grazing exceeds allowable utilization limits on each allotment in this lawsuit by significant margins. The Complaint details these alleged violations. For example, an October 1999 survey showed utilization levels on the Sacramento allotment as high as 92%, whereas the allowable use standard set forth in the BA and required under the Forest Plan is 35%. Similarly excessive forage utilization levels ranging from 50% to 85% have been found on the rest of the allotments. Despite these violations, the Forest Service has failed to take action to reduce cattle numbers or amend its permits, or to amend the allotment management plans or the annual operating plans. In fact, for the 2000 grazing season the Forest Service has authorized increased numbers of livestock on the EK/North Bluewater allotment, and has authorized the same numbers of permitted cattle and the same season of use for each of the rest of the allotments.

The Complaint contains three causes of action. The first alleges a violation of the ESA in that the Forest Service has failed to request formal consultation with FWS on the impacts upon the Mexican spotted owl and the Sacramento prickly poppy of its approval of continued cattle grazing on the Sacramento allotment. It is alleged that this approval violates the ESA because it constitutes an irreversible and irretrievable commitment of resources, and that it also violates the APA.

The second cause of action alleges a similar violation of the ESA and the APA

5

with respect to the Forest Service's approval of continued cattle grazing on the remaining seven allotments because of its impact upon the Mexican spotted owl. The third cause of action alleges a violation of the NFMA and the APA with respect to livestock grazing on four of the allotments (Sacramento, Agua Chiquita, EK/North Bluewater, and Piñon). This third count alleges that the Forest Service is allowing grazing on these allotments at levels that will result in degradation of vegetation, watersheds, and listed species, all in violation of the Lincoln National Forest Plan.

The injunctive relief sought in the Complaint is to prevent any irreversible or irretrievable commitment of resources until Defendants Glickman and the Forest Service have complied with the NFMA, the APA, and the ESA, as necessary to protect the threatened and endangered species and their habitat from further degradation, and remanding the matter to the Forest Service to make a decision that is consistent with the terms of the Forest Plan. (This relief is characterized by the proposed intervenors as seeking to require the Forest Service to initiate and complete consultation with the FWS on each grazing allotment identified in the Complaint, and in the meantime seeking injunctive relief to protect threatened and endangered species on each of the allotments.)

## II. MOTIONS TO INTERVENE

### Standards for Motions To Intervene

Under Rule 24(a) of the Federal Rules of Civil Procedure, a party has a right to intervene in a lawsuit if four requirements are met. First, the application must be timely. Second, the applicant must demonstrate an interest in the subject of the action. Third, the

applicant must be so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest. Finally, the applicant's interest must not be adequately represented by the existing parties. *See* Vermejo Park Corp. v. Kaiser Coal Corp., 998 F.2d 783, 790 (10th Cir. 1993).

Plaintiff does not dispute the timeliness of either of the motions to intervene. In fact Plaintiff does not oppose the intervention of any of these applicants in the remedial phase of this litigation. It only resists intervention by these parties in the liability phase. To that end, Plaintiff contests the second, third and fourth factors.

### A. Motion by Sacramento Grazing Association

Since 1989 the Sacramento Grazing Association ("SGA") has held the grazing permit for the Sacramento allotment. The allotment covers 139,000 acres. SGA is owned by four members of the Goss family. SGA alleges that it has spent several thousand dollars on improvements to the allotment. Further, much of its private property, consisting of 323 acres, is contiguous to the Forest Service grazing allotment, as well as to 960 acres of state land, 160 acres of army land, 1920 acres of BLM land, and 680 acres leased from the City of Alamogordo, New Mexico. The economic value of all these associated lands used by SGA is allegedly almost entirely dependent on continuation of its ranching operations on the Sacramento allotment. Without the grazing permit on this allotment, the commercial value of SGA's private property would be severely impacted and the usefulness of the other lands would be reduced "to nothing." Motion at 4. SGA asserts that the continued economic viability of its ranch and cattle operation is at stake in

this lawsuit. It characterizes the relief sought by Forest Guardians as anticipating Plaintiff's "thinly-vailed (sic) goal of eliminating, suspending or substantially modifying the Movant's grazing rights to the personal and economic detriment of the Movant." Motion at 4.

*Interest in the subject of the action.*

SGA contends that it satisfies the interest test because Plaintiff seeks injunctive relief that will have direct, immediate and harmful effects on SGA's legally protected interest in its grazing permit on the Sacramento allotment. Plaintiff concedes that SGA's economic interests may be affected by an injunction in this case, and agrees that SGA should be allowed to intervene in that phase of the case. But Plaintiff argues that SGA's interests are insufficient to support intervention in the part of the case that relates to the Forest Service's compliance with the ESA and NFMA. The Federal Defendants neither oppose nor support SGA's motion for intervention.

In Coalition of Arizona/New Mexico Counties For Stable Economic Growth v. Dep't of Interior, 100 F.3d 837 (10th Cir. 1996), the Tenth Circuit reversed the district court's denial of intervention in a case challenging the FWS's decision to protect the Mexican spotted owl under the ESA. Even though the applicant, a wildlife photographer, had little economic interest in the owl, he did have a history of studying and photographing the owl in its natural environment, and he had been the plaintiff in an earlier court case that successfully won protection for the owl. The Tenth Circuit stated:

> To limit intervention to situations where the applicant can

8

>show an economic interest would impermissibly narrow the
>broad right of intervention enacted by Congress and
>recognized by the courts.

Id., 100 F.3d at 841. The Tenth Circuit has not yet approved the bifurcation of an intervenor's participation in a case in the manner proposed by Plaintiff, although the Ninth Circuit has done so in a NEPA case. *See* Churchill County v. Babbitt, 150 F.3d 1072 (9th Cir. 1998), *as amended* 158 F.3d 491 (9th Cir. 1998). The bifurcation question was certified to the Tenth Circuit in a recent NEPA case from this district, Forest Guardians v. Bureau of Land Management, 188 F.R.D. 389, 396-97 (D.N.M. 1999).

The Tenth Circuit has recognized that the interest analysis is "highly fact-specific." Coalition of Arizona/New Mexico Counties, 100 F.3d at 841. It is true that only federal agencies must comply with the consultation requirement under the ESA. *See*, Forest Guardians v. Bureau of Land Management, 188 F.R.D. 389, 394-95 (D.N.M. 1999). But I do not agree that SGA should be prohibited from participating in the liability phase of the case.

It goes without saying that SGA is singularly interested in the outcome of the case. A motion for preliminary injunction recently filed by Plaintiff expressly requests a cessation of all livestock grazing on the Sacramento allotment until the vegetation has recovered to acceptable levels. SGA's interest in the outcome is so significant that it makes sense to allow it to participate in the merits of the case. Additionally, because SGA might be able to contest the determination on the merits in a later suit if it were not allowed to intervene, it makes sense in terms of judicial economy to allow intervention.

9

The Complaint alleges that ongoing cattle grazing exceeds allowable utilization limits on each allotment. If I understand the Plaintiff's theory of the case correctly, Plaintiff is alleging that because of chronic overgrazing on these allotments, the Forest Service's approvals of the grazing permits constitutes actions that harm the threatened and endangered species. For that reason, goes the theory, the Forest Service violates the ESA by failing to request formal consultation with FWS over its approval of continued cattle grazing under the same conditions, which constitutes an irreversible and irretrievable commitment or resources harmful to the owl and the poppy. Without overgrazing there would arguably be no action triggering the Forest Service's alleged duty to consult under the ESA. Thus, SGA is interested in the determination whether the Forest Service has violated the ESA's duty to consult, not just in the relief that might be meted out should I find a violation. I conclude, therefore, that under the facts of this case SGA meets the interest test.

*Impairment of applicant's ability to protect its interest.*

The practical impairment requirement for intervention is closely tied to the interest asserted by the applicant. Clearly, if SGA is not allowed to intervene, its ability to protect its interest in the grazing permit for the Sacramento allotment would be impaired. Even though the United States Supreme Court recently decided that ranchers with grazing permits do not have an "absolute" interest in "permit stability," <u>Public Lands Council v. Babbitt</u>, ___ U.S. ___, 120 S.Ct. 1815, 1823 (2000), that does not mean they have no protectable interest in their permits. I conclude that SGA meets this impairment test for

intervention.

*Adequate representation by existing parties.*

The Tenth Circuit has stated, "the possibility of divergence of interest need not be great in order to satisfy the burden of the applicants" on the issue of inadequacy of representation by existing parties. Coalition of Arizona/New Mexico Counties, 100 F.3d at 845. SGA argues with some cogency that the Forest Service's interests are sometimes in conflict with those of the grazing permittees. SGA is concerned that the Federal Defendants will give in to the demands of the Plaintiff without fully considering SGA's interests. I agree that there is a sufficient possibility of a divergence between the interests of the Forest Service and SGA to satisfy this intervention factor.

In sum, I conclude the SGA meets the requirements for intervention as of right under Fed. R. Civ. P. 24(a).

**B. Motion By Calvin Bishop, Sam Fairchild, Randy Elkins, Grant Myers, Rick and Kim Lessentine, and Roy Holcomb.**

The situation applicable to these proposed intervenors is similar to that of SGA. They hold grazing permits in the Lincoln National Forest on the remaining seven grazing allotments involved in this case. They seek intervention for substantially the same reasons as SGA, and I see no reason not to grant their motion to intervene for the same reasons as I am granting SGA's motion.

IT IS THEREFORE ORDERED that Sacramento Grazing Association's Motion

11

Under Rule 24 To Intervene As Defendant is hereby GRANTED;

IT IS FURTHER ORDERED that Calvin Bishop, Sam Fairchild, Randy Elkins, Grant Myers, Rick and Kim Lessentine, and Roy Holcomb's Motion To Intervene As Defendant is hereby GRANTED.

IT IS FURTHER ORDERED that the Proposed Answers attached to the motions to intervene are hereby deemed filed this date as the Answers of these parties.

_____
UNITED STATES DISTRICT JUDGE

Counsel for Plaintiff:  Marie A. Kirk, Robert B. Wiygul, EARTHJUSTICE LEGAL DEFENSE FUND, INC., Denver, Colo.; and Steven Sugarman, Santa Fe, N.M.

Counsel for Federal Defendants:  Norman C. Bay, and John Zavitz, U.S. Atty's Ofc., Albuquerque, N.M.; Lois J. Schiffer, Ass't Att'y Gen., USDOJ, Env. & Nat. Res. Div., Washington, DC; Jean Williams, Paul Boudreaux and Victoria J. Rosenthal, Wildlife & Marine Res. Sect., Washington, DC; and Andrew A. Smith, Gen. Litigation Sect., Denver, Colo.

Counsel for Defendant-Intervenor Sacramento Grazing Ass'n:  Clifford C. Nichols, Albuquerque, N.M.

Counsel for Defendants-Intervenors Bishop, Fairchild, Elkins, Myers, Lessentine, and Holcomb:  John S. Thal, ATKINSON & THAL, Albuquerque, N.M.; and Michael J. Rusing and Joel J. Herk, RUSING & LOPEZ, Tucson, Ariz.

Counsel for Proposed Defendant-Intervenor Otero County:  Daniel A. Bryant, Ruidoso, N.M.; and Murray D. Feldman, HOLLAND & HART, Boise, Idaho.