# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**FOREST GUARDIANS,**

    **Plaintiff,**

**v.**                                                 **CIV. No.  00-490  JP/RLP &**

**UNITED STATES FOREST SERVICE and
DANIEL GLICKMAN,[1] in his capacity as
Secretary of Agriculture of the United States,**

    **Defendants,**

**SACRAMENTO GRAZING ASSOCIATION,
CALVIN BISHOP, SAM FAIRCHILD,
RANDY ELKINS, GRANT MYERS, RICK
and KIM LESSENTINE, ROY HOLCOMB,
and OTERO COUNTY**

    **Defendant-Intervenors.**

_____

**SACRAMENTO GRAZING
ASSOCIATION, JIMMY GOSS, FRANCES
GOSS, JUSTIN (SPIKE) GOSS, and
BRENNA GOSS**

    **Plaintiffs,**

**v.**                                                 **CIV. No. 00-1240 JP/RLP**

**UNITED STATES DEPARTMENT OF**          **(Consolidated)**
**AGRICULTURE and DANIEL GLICKMAN,
in his capacity as Secretary of Agriculture of
the United States, UNITED STATES
FOREST SERVICE, MICHAEL**

---

[1]    Daniel Glickman no longer serves as Secretary of Agriculture.  Under Federal Rule of Civil Procedure 25(d), the present Secretary, Ann Veneman, is automatically substituted as a party.

**DOMBECK,[2] in his official capacity as Chief of the United States Forest Service, REGIONAL FORESTER ELEANOR TOWNS, in her individual and official capacity, DEPUTY REGIONAL FORESTER/ APPEAL DECIDING OFFICER JAMES T. GLADEN, in his individual and official capacity, FOREST SUPERVISOR JOSE MARTINEZ, in his individual and official capacity, RANGER LARRY SANSOM, in his individual and official capacity, DISTRICT RANGER MAX GOODWIN, in his individual and official capacity, RANGER RICK NEWMON, in his individual and official capacity, and NEW MEXICO STATE GAME COMMISSION and STEPHEN DOERR as Commissioner of the New Mexico State Game Commission,**

        **Defendants.**

## MEMORANDUM OPINION AND ORDER

On January 2, 2001, Norman Bay, the United States Attorney for the District of New Mexico, filed a notice stating that the United States had been substituted for Defendants Eleanor Towns, James T. Gladen, Jose Martinez, Larry Sansom, Max Goodwin, and Rick Newmon under 28 U.S.C. § 2679(d)(1).  (Doc. No. 81).  Also on January 2, 2001, Defendant United States of America filed a Motion to Dismiss Sixth Claim for Relief in First Amended Complaint of Sacramento Grazing Association (Doc. No. 82).  On January 19, 2001, the Plaintiffs Sacramento Grazing Association, Jimmy Goss, Frances Goss, Justin (Spike) Goss, and Brenna Goss filed a

---

[2]     Michael Dombeck no longer serves as Chief of the United States Forest Service. Under Federal Rule of Civil Procedure 25(d), the present Chief, Dale Bosworth, is automatically substituted as a party.

Motion to Vacate and Set Aside the United States of America's Notice of Substitution (Doc. No. 91). After a careful review of the briefs and the relevant law, I have determined that the United States's Motion to Dismiss Sixth Claim for Relief should be granted. The Plaintiffs' Motion to Vacate and Set Aside the Notice of Substitution should be denied.

## I.     Background

Plaintiff Sacramento Grazing Association (SGA), a general partnership based in Weed, New Mexico, runs a cattle-ranching operation on land within the Lincoln National Forest. Individual Plaintiffs Jimmy Goss, Frances Goss, Justin (Spike) Goss, and Brenna Goss hold equal partnership interests in the business. The SGA operates under a permit initially issued by the Defendant United States Forest Service (USFS) in 1989 and renewed by the USFS in 1999.

Plaintiffs' First Amended Complaint (Doc. No. 72), filed November 20, 2000, asserts six claims for relief arising out of a series of administrative decisions made by the USFS which have allegedly had an adverse impact on the Plaintiffs' ranching operation. For example, during the year 2000, USFS ordered the SGA to significantly cut the size of its cattle herd three times. The Plaintiffs contend that through such administrative actions, the Defendants have violated the Administrative Procedure Act, have infringed on the Plaintiffs' federal Constitutional rights, and have committed torts against the Plaintiffs.

The Amended Complaint names as Defendants the United States Department of Agriculture (USDA); Daniel Glickman, Secretary of the USDA, in his official capacity; the USFS; and Micheal Dombeck, Chief of the USFS, in his official capacity. However, the Amended Complaint also names several USFS employees as defendants in their individual capacities as well as in their official capacities. The individual Defendants are Eleanor Towns, Regional Forester for

the Southwest Region of USFS; James T. Gladen, Appeal Deciding Officer and Deputy Regional Forester for the Southwestern Region; Jose Martinez, Forest Supervisor of the Lincoln National Forest; Larry Sansom, assistant to Mr. Martinez; Max Goodwin, Sacramento District Ranger; and Rick Newmon, a range conservationist in the Lincoln National Forest.

The Plaintiffs assert their Sixth Claim for Relief, the subject of this Memorandum Opinion and Order, against Towns, Gladden, Martinez, Sansom, Goodwin, and Newmon in their individual capacities. The Plaintiffs' Sixth Claim charges that these Defendants ("the individual Defendants") committed a set of actions that amounts to a prima facie tort under New Mexico law. (First Amended Complaint at 56). The Plaintiffs contend that the individual Defendants made decisions with respect to the Plaintiffs that were motivated by an unlawful intent to destroy the SGA's ranching business, and that some of the individual Defendants even explicitly stated this motive. (First Amended Complaint at 12).

The Plaintiffs maintain that the individual Defendants took a number of improper actions in order to accomplish their unlawful purpose, including the following: 1) denying Range Betterment Funds to the Plaintiffs (First Amended Complaint at 14-15); 2) denying Plaintiffs' requests for improved notice, or more convenient scheduling, of evaluations performed on the land allotted to Plaintiffs (First Amended Complaint at 16); 3) setting a grazing rotation schedule which produced overgrazing on the summer pastures (First Amended Complaint at 17-18); 4) denying access to pastures traditionally included within the allotment for which Plaintiffs hold the grazing permit (First Amended Complaint at 19-20); 5) during the Plaintiffs' administrative appeal on the issue of pasture access, engaging in numerous procedural improprieties such as having ex parte communications among themselves and wrongfully excluding evidence favorable

4

to Plaintiffs  (First Amended Complaint at 21-26); 6)  imposing substantial cuts in Plaintiffs' herd

size based on unsubstantiated theories about the effect of grazing on the habitat of Mexican

spotted owls, and retaliating with additional cuts when Plaintiffs did not comply (First Amended

Complaint at 42-43); 7)  participating in the presentation of factual misrepresentations to

Congressional personnel and elected officials  (First Amended Complaint at 29-30, 43); 8)

participating in the presentation of factual misrepresentations to this Court  (First Amended

Complaint at 43-45); and 9) setting unreasonable limitations on Plaintiffs' shipping operations

(First Amended Complaint at 45-46).

On January 2, 2001, the United States Attorney for the District of New Mexico, Norman

Bay, filed a Certificate declaring that the individual federal employees "were acting within the

course and scope of their employment at all relevant times."  (Attachment to Doc. No. 81).  The

Certificate accompanied the United States's Notice of Substitution, which stated that the United

States had been substituted for the individual Defendants in the case under 28 U.S.C. §

2679(d)(1).  (Doc. No. 81).

Also on January 2, 2001, the United States filed a Motion to Dismiss Sixth Claim for

Relief in First Amended Complaint of Sacramento Grazing Association.  (Doc. No. 82).  The

basis for the motion is that following substitution, the Plaintiffs' Sixth Claim for Relief became

controlled by the Federal Tort Claims Act (FTCA).  28 U.S.C. § 2679(d)(4); 28 U.S.C. § 1346.

The United States contends that the Plaintiffs failed to comply with certain administrative

exhaustion requirements imposed by the FTCA and that this Court should thus dismiss the Sixth

Claim for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).[3]

In response, the Plaintiffs maintain that the United States Attorney's certification and substitution under 28 U.S.C. § 2679(d)(1) are invalid, and that the FTCA and its administrative exhaustion requirements hence do not apply. The Plaintiffs present this argument both in their Response to the United States's Motion to Dismiss Sixth Claim for Relief (Doc. No. 90) and in their Motion to Vacate and Set Aside the United States of America's Notice of Substitution (Doc. No. 91), filed January 19, 2001. Because the United States's Motion to Dismiss the Sixth Claim for Relief hinges on the validity of the substitution, this Court will begin by addressing the Plaintiffs' motion.

**II.      Plaintiffs' Motion to Vacate and Set Aside the USA's Notice of Substitution**

The United States Supreme Court has noted that "When a federal employee is sued for a wrongful or negligent act, the Federal Employees Liability Reform and Tort Compensation Act of

---

[3]      The United States brings its motion under Rule 12(b)(1) because compliance with the administrative exhaustion requirements of the FTCA, set out in 28 U.S.C. § 2675(a), constitutes a jurisdictional prerequisite for actions brought under the FTCA. See, e.g., *Cizek v. United States*, 953 F.2d 1232, 1233 (10th Cir. 1992). In their response, the Plaintiffs argue that the United States's motion is "essentially . . . a camouflaged Fed.R.Civ.P. 12(b)(6) motion" because a decision on whether to grant the motion "requires a determination of the sufficiency of the allegations in the First Amended Complaint on the issue of 'course and scope of employment.'" (Response at 4). Hence, the Plaintiffs argue, the Court should accept the Plaintiffs' allegations as true and construe the facts in the light most favorable to the Plaintiffs.

However, this Court would accept the Plaintiffs' allegations regarding the individual federal Defendants' actions as true even in a 12(b)(1) analysis, because the United States does not appear to dispute those allegations for purposes of this motion. At this stage, the conflict between the parties is over the applicable law, and not over the relevant facts. The United States's position is that the individual Defendants' alleged actions took place within the course and scope of their employment. Likewise, the Plaintiffs do not contest the United States's version of the relevant jurisdictional facts. The Plaintiffs do not claim to have satisfied the administrative exhaustion requirements for claims under the FTCA. Rather, the Plaintiffs contend that the FTCA should not govern their tort claim against the individual federal Defendants.

1988 . . . empowers the Attorney General to certify that the employee 'was acting within the scope of his office or employment at the time of the incident out of which the claim arose . . . .' 28 U.S.C. § 2679(d)(1)." *Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 419-20 (1995). Once the Attorney General, or a delegate, has issued such a certification, the plaintiff's suit "shall be deemed an action against the United States . . . and the United States shall be substituted as the party defendant." 28 U.S.C. § 2679(d)(1). After the United States takes the place of the original defendant, the plaintiff can pursue the cause of action only under the FTCA. 28 U.S.C. § 2679(d)(4); 28 U.S.C. § 1346(b).

In *Gutierrez de Martinez*, the Supreme Court held that certifications under 28 U.S.C. § 2679(d)(1) are subject to judicial review. 515 U.S. 417. The United States Attorney's certification "is prima facie evidence that an employee's challenged conduct was within the scope of his employment." *Richman v. Straley*, 48 F.3d 1139, 1145 (10th Cir. 1995). "[T]he burden of rebutting the scope-of-employment certification with specific facts" rests with the plaintiff. *Id*. Courts reviewing a United States Attorney's certification that a defendant federal employee acted within the scope of employment look to the *respondeat superior* law of the state in which the alleged tort took place. See *Williams v. United States*, 350 U.S. 857 (1955); *Richman,* 48 F.3d at 1145; *Nichols v. United States*, 796 F.2d 361, 365 n.4 (10th Cir. 1986).

In this case, the Plaintiffs challenge the United States Attorney's certification on two principal grounds. First, the Plaintiffs argue that the original Certification (attachment to Doc. No. 81), filed on January 2, 2001, contained deficiencies that undermined its validity. The Plaintiffs point out that in the Certification, the United States Attorney stated that based on "information now available with respect to the *incident*" described in the Complaint, he concluded

7

that the individual federal defendants acted within the scope of their employment.  (Emphasis added).  The Plaintiffs emphasize that in fact, the Amended Complaint referred not to a single *incident*, but rather to numerous *incidents*.  According to the Plaintiffs, this discrepancy indicates that the United States Attorney did not consider each allegation in order to determine whether the federal employees' acts occurred in the course of employment.  The Plaintiffs also note that the Certification refers to the *Complaint*, although by the time the United States filed the Certification, the Plaintiffs had already filed their First Amended Complaint (Doc. No. 72).

In response to the Plaintiffs' objections to the sufficiency of the Certification, on February 12, 2001, the United States filed an Amended Certification (attachment to Doc. No. 102), which clarifies that the United States Attorney's scope-of-employment determination applies to all of the alleged acts listed in the Plaintiffs' First Amended Complaint.  Even assuming that the original Certification's reference to only a single incident constituted a significant weakness in the document, this Court is satisfied that the Amended Certification corrects the previous lack of specificity identified by the Plaintiffs.  In their Reply to the United States's Response (Doc. No. 109), the Plaintiffs do not discuss again the issue of the alleged vagueness of the United States Attorney's Certification.

The Plaintiffs also argue that the United States Attorney's Certification is invalid because many of the actions alleged in the First Amended Complaint cannot be considered to fall within the course and scope of employment.  The Plaintiffs allege that some of the individual federal Defendants made statements reflecting an intent to destroy the SGA's business and eliminate ranching operations from the Lincoln National Forest.  These motives conflict with the legislative purposes of the Multiple-Use, Sustained-Yield Act of 1960, 16 U.S.C. §§ 528 et seq. and the

8

Land Policy and Management Act, 43 U.S.C. §§ 1701 et seq., the Plaintiffs contend.  Hence the actions allegedly taken by the individuals federal Defendants to further their goal of harming the SGA's operation– including setting a summer pasture rotation schedule that resulted in overgrazing, denying the SGA access to pastures that are historically part of the Sacramento allotment, and cutting the SGA's herd by 40 percent over a two year period– amounted to illegal conduct.

The Plaintiffs maintain that because the individual federal Defendants engaged in improper activities, in an effort to accomplish unlawful aims, this Court should find that the Defendants were acting beyond the course and scope of their employment.  In support of their position, the Plaintiffs cite *Malley v. Briggs*, 475 U.S. 335 (1986), a Supreme Court case involving a state employee who raised a qualified immunity defense in an action brought under 42 U.S.C. § 1983, and *Anderson v. Creighton*, 483 U.S. 635 (1987), a Supreme Court case involving a federal employee who raised a qualified immunity defense in an action brought under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).  The Plaintiffs note that the *Creighton* court held that "whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful action generally turns on the 'objective legal reasonableness' of the action."  483 U.S. at 639, quoting *Harlow v. Fitzgerald*, 457 U.S. 800 (1982).  Extending this standard to the present case, the Plaintiffs argue that reasonable federal employees would have known that their conduct was unlawful, and that therefore the United States should not protect the employees from individual liability by substituting itself as the Defendant.

The Plaintiffs provide no persuasive authority, however, for applying the standard for

9

determining whether a federal employee is entitled to qualified immunity to an evaluation of a

United States Attorney's scope-of-employment certification.  As the United States points out,

case law directs courts to use state *respondeat superior* law in reviewing certifications under 28

U.S.C. § 2679(d)(1).  The United States argues that all of the improper actions alleged in the First

Amended Complaint fell within the individual federal employees' course and scope of

employment, as defined by New Mexico law.

In *Richardson v. Glass*, 114 N.M.119, 122, 835 P.2d 835, 838 (1992), the New Mexico

Supreme Court offered the following standard for assessing scope of employment:

> An act of an employee is within the scope of employment if:  (1)  It was something
> fairly and naturally incidental to the employer's business assigned to the employee,
> and (2)  It was done while the employee was engaged in the employer's business
> with the view of furthering the employer's interest and did not arise entirely from
> some external, independent and personal motive on the part of the employee.

The United States contends that the Forest Service employees' actions that form the basis of the

Plaintiffs' claim, such as decisions about pasture allocation and herd size, are "all the kinds of

actions that the Individual Federal Defendants were employed to perform, occurred during their

employment, were purported to be on behalf of the Forest Service as part of their duties on the

Lincoln National Forest and all served to some extent the purposes of the Forest Service as their

employer."  (United States' Opposition to SGA's Motion to Vacate and Set Aside United States'

Notice of Substitution (Doc. No. 103) at 5).

The United States observes, and this Court agrees, that the Plaintiffs do not appear to

dispute that the employees' actions are of the general type properly performed by Forest Service

employees.  Instead, the Plaintiffs maintain that against the backdrop of the individual federal

Defendants' alleged intent to destroy the SGA, the Defendants' actions exceeded the scope of

their employment.  However, the United States demonstrates that under New Mexico r*espondeat*

*superior* law, unlawful motives do not necessarily move an employee's conduct outside of the

scope of employment.  Courts interpreting New Mexico law have held that acts may fall within

the scope of employment provided they are "actuated, at least in part, by a purpose to serve the

employer," *Narney v. Daniels*, 115 N.M. 41, 49, 846 P.2d 347, 355 (Ct. App. 1992), and "did not

arise wholly from some external, independent, and personal motive on the part of the servant."

*Nichols v. United States*, 796 F.2d 361, 365 (10th Cir. 1986), quoting *Gonzales v. Southwest*

*Security and Protection Agency, Inc.*, 100 N.M. 54, 665 P.2d 810 (Ct. App. 1983).  Here, the

United States argues, the intent to perform duties on behalf of the Forest Service motivated the

individual federal employees to at least some extent.

      The Plaintiffs fail to offer a counter-analysis to the United States's interpretation of New

Mexico *respondeat superior* law.  The Plaintiffs seem to concede that in New Mexico, unlawful

motives do not take employee actions outside of the scope of employment.  In their Reply, the

Plaintiffs focus instead on two other arguments.  First, the Plaintiffs state that applying standards

associated with the FTCA to a review of the validity of the United States Attorney's Certification

is improper, because "the FTCA is only relevant if the United States is a party and that can only

be based upon the inappropriate premature assumption that the very Substitution presently in

question is valid."  (Reply at 2).  The Plaintiffs point out that it did not bring a state tort claim

against the United States, but rather against the individual federal Defendants.

      However, the Plaintiffs ignore that the certification and substitution procedures under 28

U.S.C. § 2679(d)(1) are designed to address tort claims initially brought against individual federal

employees.  Courts evaluating scope-of-employment certifications routinely draw on state

11

*respondeat superior* law-- the standard to which the Plaintiffs object because its applicability in such cases developed through FTCA case law. See, e.g., *Richman*, 48 F.3d at 1145. The Plaintiffs cite no cases supporting the proposition that it is inappropriate to apply state *respondeat superior* law in reviewing scope-of-employment certifications. Nor do the Plaintiffs explain why it would be more appropriate to apply *Bivens* principles, as opposed to state law *respondeat superior* principles, to issues raised in state tort claims.[4]

Second, the Plaintiffs devote a substantial portion of their Reply brief to the argument that the individual federal employees acted in conflict with policies set by Congress, that the employees' actions thus do not qualify as "agency actions" under the Administrative Procedure Act, and that the Plaintiffs therefore present a viable *Bivens* claim. Again, however, the Plaintiffs fail to establish the relevancy of a *Bivens* analysis to a review of a United States Attorney's scope-of-employment certification. The Plaintiffs link their Third Claim for Relief (the *Bivens* claim) with their Sixth Claim for Relief (the state tort claim), emphasizing that the individual federal defendants' alleged abuse of their authority "to achieve an objective in direct conflict with [a] Congressional mandate . . . in large part is the core of the SGA's actions set forth in their Third

---

[4]     Plaintiffs also state, briefly, that because the United States has not waived immunity for intentional torts under the FTCA, the FTCA should not be applied here because Plaintiffs' prima facie tort claim would be excluded. However, even assuming that the prima facie tort falls within the intentional tort exception to the FTCA, 28 U.S.C. § 2680(h), the fact that Plaintiffs may not be able to pursue their claim is not a sufficient ground for finding a certification and substitution to be invalid. In *Guiterrez de Martinez*, 515 U.S. 417, the Supreme Court did recognize that the substitution of the United States in cases involving claims that are excluded under the FTCA presents a unique problem. "In such a case, the certification surely does not qualify as a declaration against the Government's interest: it does not expose the United States to liability, and it shields a federal employee from liability." Id. at 427. The Court cited this problem as a factor supporting judicial review of the Attorney General's scope-of-employment decisions. Id. at 436. The Court did not state that this problem justifies employing a different standard for determining whether employees have acted within the scope of employment.

and Sixth Claims for Relief."  (Reply at 6).

The Plaintiffs' Third and Sixth Claims for Relief are based on distinct legal theories, though.  The Sixth Claim asserts that the individual federal Defendants committed a prima facie tort, while the Third Claim asserts that the individual Defendants acted within their official duties to violate the Plaintiffs' constitutional rights.  As noted above, the determination of whether a federal employee may assert qualified immunity in defense against a *Bivens* constitutional claim involves a different type of inquiry than a consideration of whether a United States Attorney properly concluded that a federal employee acted within the course and scope of employment in committing a tort.  Therefore, this Court finds that the Plaintiffs' arguments concerning the *Bivens* claim are not relevant to the present question of whether the United States's Attorney's Notice of Substitution should be vacated.

Given that the Plaintiffs offer no persuasive authority for applying a standard other than New Mexico *respondeat superior* law, and given that the Plaintiffs make no argument showing that the individual federal employees acted outside the course and scope of their employment under New Mexico law, this Court concludes that the Motion of Sacramento Grazing Association, et al. to Vacate and Set Aside the United States of America's Notice of Substitution (Doc. No. 91) should be denied.

III.    **Motion by Defendant United States Forest Service and Defendant Daniel Glickman to Dismiss Sixth Claim for Relief in First Amended Complaint of SGA**

The federal government "as sovereign, is immune from suit save as it consents to be sued . . . and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit."  *United States v. Sherwood*, 312 U.S. 584, 586 (1941).  The FTCA  "provides a limited

13

waiver of the federal government's sovereign immunity."  *Bell v. United States*, 127 F.3d 1226,

1229 (10th Cir. 1997).  Under the FTCA, the United States district courts have jurisdiction over

claims arising from injuries

> caused by the negligent or wrongful act or omission of any employee of the
> Government while acting within the scope of his office or employment, under
> circumstances where the United States, if a private person, would be liable to the
> claimant in accordance with the law of the place where the act or omission
> occurred.

28 U.S.C. § 1346(b).

As the United States points out, the FTCA provides that upon certification and

substitution under 28 U.S.C. § 2679(d)(1), the plaintiff's suit is to "proceed in the same manner as

any action against the United States filed pursuant to section 1346(b) . . . and shall be subject to

the limitations and exceptions applicable to those actions."   Among the "limitations and

exceptions" that apply to suits brought under the FTCA is an administrative exhaustion

requirement.  A plaintiff may not initiate an FTCA action "unless the claimant shall have first

presented the claim to the appropriate Federal agency and his claim shall have been finally denied

by the agency in writing," or if the agency fails "to make final disposition of a claim within six

months after it is filed."  28 U.S.C. § 2675(a).  The Tenth Circuit has stressed that "[b]ecause the

FTCA constitutes a waiver of the government's sovereign immunity, the notice requirements

established by the FTCA must be strictly construed."  *Cizek v. United States*, 953 F.2d 1232,

1233 (10th Cir. 1992), citing *Three-M Enters., Inc. v. United States*, 548 F.2d 293, 295 (10th Cir.

1977).  Notice to the agency is a jurisdictional requirement, which cannot be waived.  *Id.*

In this case, the United States contends that the Plaintiffs did not present an administrative

claim to the USFS, and that the Plaintiffs thus failed to comply with 28 U.S.C. § 2675(a).

14

Attached to the United States's brief is the Declaration of Sharon Lowance, a Claims

Administrator with the USFS.[5]  Ms. Lowance states that neither the SGA nor any of the named

Plaintiffs filed an administrative claim in this matter.  The Plaintiffs do not claim to have complied

with the administrative requirements imposed by 28 U.S.C. § 2675(a).  Nor do the Plaintiffs

dispute that meeting these requirements is a jurisdictional prerequisite for pursuing a FTCA claim.

Rather, the Plaintiffs focus in their Response only on the argument that the United States

Attorney's certification and substitution were invalid and that the FTCA hence does not apply.

      This Court found above that the United States Attorney's certification and substitution

were proper.  Once the United States has been substituted as a defendant under 28 U.S.C. §

2679(d)(1), "[t]he case then falls under the governance of the Federal Tort Claims Act."

*Gutierrez de Martinez*, 515 U.S. at 420; 28 U.S.C. § 2679(d)(4).  The jurisdictional requirements

of the FTCA, including the administrative claim requirement, then apply to the plaintiff's claim.

28 U.S.C. § 2679(d)(4).  Here, the Plaintiffs concede that they did not fulfill the administrative

exhaustion requirement outlined in 28 U.S.C. § 2675(a).  This Court thus finds that the United

States's motion to dismiss the Plaintiffs' Sixth Claim for Relief (Doc. No. 72) should be granted

for lack of subject matter jurisdiction, under Federal Rule of Civil Procedure 12(b)(1).

---

     [5]      Consideration of evidence outside of the complaint may, in limited circumstances, convert a Rule 12(b)(1) motion into a Rule 56 motion.  This conversion occurs where "the jurisdictional question is intertwined with the merits of the case."  *Wheeler v. Hurdman*, 825 F.2d 257, 259 (10th Cir. 1987).  In this case, however, the Plaintiffs do not challenge the jurisdictional facts alleged by the United States.  Plaintiffs do not claim to have fulfilled the administrative notice requirements of the FTCA.  Therefore, this Court's reference to Ms. Lowance's declaration was not necessary in its decision to accept the United States's jurisdictional facts as true.

IT IS THEREFORE ORDERED that the Plaintiffs' Motion to Vacate and Set Aside the United States of America's Notice of Substitution (Doc. No. 91) is DENIED and the United States's Motion to Dismiss Sixth Claim for Relief in First Amended Complaint of Sacramento Grazing Association (Doc. No. 82) is GRANTED.

_____

CHIEF UNITED STATES DISTRICT JUDGE

16