IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**FOREST GUARDIANS,**

    Plaintiff,

v.                                                                                          CIV. No.  00-490  JP/RLP &

**UNITED STATES FOREST SERVICE and
DANIEL GLICKMAN,[1] in his capacity as
Secretary of Agriculture of the United States,**

    Defendants,

**SACRAMENTO GRAZING ASSOCIATION,
CALVIN BISHOP, SAM FAIRCHILD,
RANDY ELKINS, GRANT MYERS, RICK
and KIM LESSENTINE, ROY HOLCOMB,
and OTERO COUNTY**

    Defendant-Intervenors.

---

**SACRAMENTO GRAZING
ASSOCIATION, JIMMY GOSS, FRANCES
GOSS, JUSTIN (SPIKE) GOSS, and
BRENNA GOSS**

    Plaintiffs,

v.                                                                                          CIV. No. 00-1240 JP/RLP

**UNITED STATES DEPARTMENT OF                          (Consolidated)
AGRICULTURE and DANIEL GLICKMAN,
in his capacity as Secretary of Agriculture of
the United States, UNITED STATES
FOREST SERVICE, MICHAEL**

---

[1]    Daniel Glickman no longer serves as Secretary of Agriculture.  Under Federal Rule of Civil Procedure 25(d), the present Secretary, Ann Veneman, is automatically substituted as a party.

**DOMBECK,[2] in his official capacity as Chief of the United States Forest Service, REGIONAL FORESTER ELEANOR TOWNS, in her individual and official capacity, DEPUTY REGIONAL FORESTER/ APPEAL DECIDING OFFICER JAMES T. GLADEN, in his individual and official capacity, FOREST SUPERVISOR JOSE MARTINEZ, in his individual and official capacity, RANGER LARRY SANSOM, in his individual and official capacity, DISTRICT RANGER MAX GOODWIN, in his individual and official capacity, RANGER RICK NEWMON, in his individual and official capacity, and NEW MEXICO STATE GAME COMMISSION and STEPHEN DOERR as Commissioner of the New Mexico State Game Commission,**

        **Defendants.**

## MEMORANDUM OPINION AND ORDER

On January 2, 2001, Defendants Eleanor Towns, James T. Gladen, Jose Martinez, Larry Sansom, Max Goodwin, and Rick Newmon filed a Motion to Dismiss Third Claim for Relief in Sacramento Grazing Association's First Amended Complaint in Consolidated Action (Doc. No. 84). After a careful review of the briefs and the relevant law, I have determined that these Defendants' motion should be granted in part at this time and that a decision on the undecided issues addressed in Defendants' motion should be rendered after the parties submit supplemental briefs.

---

[2] Michael Dombeck no longer serves as Chief of the United States Forest Service. Under Federal Rule of Civil Procedure 25(d), the present Chief, Dale Bosworth, is automatically substituted as a party.

2

**I.     Background**

Plaintiff Sacramento Grazing Association (SGA) operates a cattle-ranching business in which individual Plaintiffs Jimmy Goss, Frances Goss, Justin (Spike) Goss, and Brenna Goss are equal partners.  The SGA grazes its cattle herd on land located within the Lincoln National Forest.  The SGA operates under a grazing permit first granted by the United States Forest Service (USFS) in 1989 and later renewed in 1999.  Plaintiffs' Amended Complaint alleges that individual Defendants Towns, Gladen, Martinez, Sansom, Goodwin, and Newmon, all employees of the USFS, have issued a series of improper administrative decisions which have harmed the Plaintiffs' ranching operation.  The Plaintiffs contend that the individual Defendants have acted with the goal of destroying the Plaintiffs' business.[3]

The Plaintiffs' Third Claim for Relief, the subject of this Memorandum Opinion and Order, asserts that by taking part in this conduct, the individual federal Defendants have engaged in actions that "exceed the scope of their authority and employment and have deprived the Plaintiffs of their property without due process of law and equal protection under the law as required by the Fifth Amendment of the United States Constitution."  (First Amended Complaint (Doc. No. 72) at 53-54).  The parties agree that the Plaintiffs' Third Claim constitutes a *Bivens* action– a suit against federal employees for money damages arising from alleged violations of the United States Constitution.

On January 2, 2001, the individual federal Defendants filed a Motion to Dismiss Third Claim for Relief in Sacramento Grazing Association's First Amended Complaint in Consolidated

---

[3]     This Court discussed the factual background of this litigation in more detail in a Memorandum Opinion and Order (Doc. No. 122) entered April 30, 2001.  In that Opinion, the Court granted the individual Defendants' motion to dismiss the Plaintiffs' Sixth Claim for Relief.

Action (Doc. No. 84)).  In support of their motion, the individual Defendants argue that the Administrative Procedure Act (APA), 5 U.S.C. §§ 551-706, provides an alternative remedy for the types of injuries alleged by the Plaintiffs, and that the APA hence precludes the Plaintiffs' *Bivens* claim.[4]

In deciding Rule 12(b)(6) motions, courts must "accept the well-pleaded allegations of the complaint as true and construe them in the light most favorable to the plaintiff."  *Ramirez v. Department of Corrections*, 222 F.3d 1238, 1240 (10th Cir. 2000).  A court should dismiss a complaint only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  In this case, the individual Defendants do not appear to contest the Plaintiffs' factual allegations for purposes of this motion.  The dispute between these parties arises over questions of legal interpretation, and not over the relevant facts, at this stage of litigation.

**II.     Whether the Administrative Procedure Act precludes *Bivens* suits**

Noting that "[u]nder 28 U.S.C. § 1331 . . . the federal courts have jurisdiction to decide all cases 'aris[ing] under the Constitution, laws, or treaties of the Unites States,'" the Supreme Court has observed that "courts' power to grant relief not expressly authorized by Congress is firmly established."  *Bush v. Lucas*, 462 U.S. 367, 374 (1983).  In *Bivens v. Six Unknown Named*

---

[4]     In their initial Memorandum in Support of Individual Federal Defendants' Motion to Dismiss Third Claim for Relief in Sacramento Grazing Association's First Amended Complaint in Consolidated Action (Doc. No. 85), the individual Defendants argued in addition that the Plaintiffs have failed to demonstrate a constitutionally-protected interest in their grazing permit and that the individual Defendants have a qualified immunity defense against the *Bivens* claim.  However, in their Reply Memorandum (Doc. No. 105), the individual Defendants stated that they were withdrawing these two arguments for purposes of this motion.  Therefore, this Opinion focuses only on the individual Defendants' position that the APA precludes the Plaintiffs' *Bivens* claim.

4

*Federal Agents*, 403 U.S. 388 (1971), the United States Supreme Court recognized a cause of action for money damages against individual federal employees for Fourth Amendment violations. In cases following *Bivens*, the Supreme Court has allowed similar suits for violations of other Constitutional rights.  See *Carlson v. Green*, 446 U.S. 14 (1980) (Eighth Amendment); *Davis v. Passman*, 442 U.S. 228 (1979) (Fifth Amendment).

The Supreme Court has emphasized that a *Bivens* remedy is available only if there are no "'special factors counselling hesitation in the absence of affirmative action by Congress,' no explicit statutory prohibition against the relief sought, and no exclusive statutory alternative remedy." *Schweiker v. Chilicky*, 487 U.S. 412, 421 (1988), citing *Davis,* 442 U.S. at 246-47. Among the "special factors counselling hesitation" are "indications that congressional inaction has not been inadvertent." *Schweiker*, 487 U.S. at 423.  The Supreme Court has stated that "[w]hen the design of a Government program suggests that Congress has provided what it considers adequate remedial mechanisms for constitutional violations that might occur in the course of its administration, we have not created additional *Bivens* remedies." *Id.*

Under the APA, "A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof."  5 U.S.C. § 702.  The APA defines "agency action" as "the whole or part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act . . . ."  5 U.S.C. § 551(13).  The individual federal Defendants in this case contend that "[t]he actions alleged by Plaintiffs here (improper reductions of number of livestock allowed under the permit, improper exclusion of livestock form [sic] certain areas, improper consideration and handling of data and information on stocking, improper handling of the administrative appeal) are

5

clearly agency action under the APA." (Memorandum in Support of Individual Federal Defendants' Motion to Dismiss Third Claim for Relief in Sacramento Grazing Association's First Amended Complaint in Consolidated Action (Doc. No. 85) at 7).

The individual federal Defendants maintain that the APA applies to the actions alleged in the Complaint and, therefore, this Court should not permit the Plaintiffs to pursue their *Bivens* claim. The individual federal Defendants cite several cases, many of which draw on the United States Supreme Court's reasoning in *Bush* and *Chilicky*, that support the proposition that the APA precludes *Bivens* actions. The Defendants note that while the Tenth Circuit has not ruled on the question, the Eighth, Ninth, and Eleventh Circuits have all found that the APA preempts *Bivens* claims. See *Maxey v. Kadrovach*, 890 F.2d 73, 75-76 (8th Cir. 1990) (holding that "the district court correctly dismissed [the plaintiff's] *Bivens* claims" because the plaintiff could "appeal [an] agency decision to a federal court under the APA to gain redress, albeit limited in nature"); *Sky Ad., Inc. v. McClure*, 951 F.2d 1146, 1148 (9th Cir. 1991) (finding "the presence of an explicit remedy for unconstitutional rulemaking in the APA" to be a reason favoring the dismissal of the plaintiffs' *Bivens* claim); *Gleason v. Malcolm*, 718 F.2d 1044, 1048 (11th Cir. 1983) (holding that a plaintiff who "could have sought equitable relief, i.e. reinstatement and back pay, pursuant to the Administrative Procedure Act," but who failed to do so, could not bring a *Bivens* claim for damages.)

The individual Defendants point out that in addition to these three Courts of Appeals, three district courts within the Tenth Circuit have ruled that where a plaintiff challenges an agency action covered by the APA, the plaintiff may not maintain a *Bivens* suit. See *Whitlock Construction, Inc. v. Glickman*, 71 F.Supp.2d 1154, 1159 (D.Wyo. 1999) (stating that "if [the

6

defendant's] alleged conduct in this matter constitutes agency action under the APA, [the plaintiff] may not maintain its claim for damages under *Bivens*"); *La Compania Ocho v. United States Forest Serv.*, 874 F.Supp. 1242, 1246-47 (D.N.M. 1995); *Custodio v. United States*, 866 F.Supp. 479, 483 (D.Colo.1994) (holding that "because . . . the plaintiff has a meaningful alternative remedy pursuant to the APA, . . . special factors bar his [*Bivens*] claim.")

In particular, the individual Defendants rely on the analysis developed in *La Compania Ocho*. In that case, the plaintiffs brought a *Bivens* action against the USFS, and individual agents and employees of the United States Department of Agriculture and USFS, for alleged mismanagement of the Vallecitos Federal Sustained Yield Unit, a section of the Carson National Forest. The *La Compania Ocho* Court offered several reasons for its conclusion that "Plaintiffs' *Bivens* claims predicated upon Defendants' alleged maladministration of the Vallecitos Unit are precluded by the [APA], because the APA represents Congress' remedial approach to unlawful agancy action." 874 F.Supp. at 1247. The Court observed that *Chilicky* and *Bush* signaled a trend toward narrowing the availability of *Bivens* claims. The *Compania Ocho* Court stressed that the Tenth Circuit had recognized this trend in such cases as *Brothers v. Custis*, 886 F.2d 1282 (10th Cir. 1989), where the Tenth Circuit stated that "[t]he courts, including our court, are reading *Chilicky* broadly– that is, as cutting back significantly on the availability of *Bivens* actions." *La Compania Ocho*, 874 F.Supp. at 1247, quoting *Brothers*, 886 F.2d at 1284.

The *La Compania Ocho* Court also considered the APA's provisions for judicial review of agency actions, determining that the statute represents an alternative remedy for plaintiffs seeking to bring constitutional claims against federal agency employees. The Court observed that:

> A reviewing court is authorized to "decide all relevant questions of law" and may

7

> either "compel agency action unlawfully withheld or unreasonably delayed" or "hold unlawful and set aside agency action, findings and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law . . . [or] in excess of statutory jurisdiction . . . [or] without observance of procedure required by law . . . ." 5 U.S.C. § 706. And significantly, the reviewing court is also authorized to set aside agency action "contrary to constitutional right, power, privilege or immunity . . . ." *Id. See also* H.R.Rep. No. 1980, 79th Cong., 2d Sess. 275 (1946), *reprinted in* 1946 U.S.C.C.Serv. 1195, 1200, 1205 (APA's remedies redress 'every legal wrong.").

874 F.Supp. at 1247.

In addition to taking note of plaintiffs' ability to seek redress for unlawful agency actions under the APA, the *La Compania Ocho* Court also pointed to policy reasons weighing against extending *Bivens* suits to constitutional claims arising from agency actions. "Federal agencies regulate a vast range of business and social activity," the Court stated, and their "decisions ineluctably impose regulatory costs on those affected, and may even result in serious economic dislocation or loss." Id. at 1248. The Court expressed concern that "[i]f individual officers of federal agencies were forced to compensate those so affected because discretionary agency action is later found to be unlawful, regulation would soon prove unworkable or inordinately expensive." Id.

In this case, the Plaintiffs do not appear to contest the individual federal Defendants' position that in suits brought to redress injuries stemming from agency actions, the APA precludes *Bivens* claims. Given this lack of opposition, and given the persuasiveness of the reasoning of such cases as *La Compania Ocho*, this Court accepts the individual Defendants' contention that the Plaintiffs may not pursue *Bivens* claims based on agency activity constituting "agency actions" under the APA. However, as the Plaintiffs emphasize, actions taken by federal agency employees do not necessarily fall within the APA's definition of "agency action." The Plaintiffs argue that

the APA does not apply to the improper actions described in the Complaint.

## III. Whether the challenged USFS decisions constituted "agency actions" under the APA

The Statement of Facts in the Plaintiffs' Amended Complaint spans more than 35 pages, and alleges a wide range of unlawful conduct on the part of the individual Defendants.  In stating their Third Claim for Relief, the Plaintiffs cite generally "[t]he individual and cumulative acts of [the individual federal] Defendants . . . set forth above" as the activity giving rise to their *Bivens* claim.  One problem in evaluating whether the individual Defendants' alleged acts constitute "agency actions" is that both the Plaintiffs' and Defendants' briefs address the allegations in the Complaint primarily in the aggregate.

The Plaintiffs argue that against the backdrop of the individual Defendants' purportedly improper motives, this Court should view all of the acts alleged in the Complaint as falling outside of the definition of  "agency action" under the APA.  The Plaintiffs allege that the individual Defendants expressed an intent to destroy the SGA's business and eliminate ranching operations from the Lincoln National Forest.  Using this alleged unlawful objective as a premise, the Plaintiffs contend USFS decisions "that might otherwise in the absence of a malicious intent be characterized as exercises of discretion fitting comfortably within the label of 'agency action' become evidence of a course of continuous malicious conduct by the Defendants clearly beyond the scope of anything the APA was intended to deal with."  (Opposition of Sacramento Grazing Association, et al. to Individual Federal Defendants' Motion to Dismiss Third Claim for Relief in First Amended Complaint of Sacramento Grazing Association at 4.)

However, as the Defendants point out, the APA contains mechanisms for addressing

allegations of bias and improper motive on the part of agency decision-makers.  The APA empowers a reviewing court to set aside an agency decision that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706.  A showing of bias may support setting aside an agency action on one of these grounds.  See, e.g., *Natural Resources Defense Council v. SEC*, 606 F.2d 1031, 1049 n. 23 (D.C. Cir. 1979).

Further, this Court notes that cases involving other aspects of judicial review under the APA seem to suggest that the allegation of unfair bias is not sufficient to remove a claim from coverage under the statute.  For example, in discussing the proper scope of the record to be considered by a court reviewing an agency decision, the United States Supreme Court stated that while "inquiry into the mental processes of administrative decisionmakers is usually to be avoided," testimony from agency officials may be permitted where there is a "strong showing of bad faith or improper behavior."  *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971).  The Court's examination of the role of evidence of bad faith in a review of agency action conflicts with the assumption, urged by Plaintiffs, that allegations of improper motives necessarily take a suit out of the system of judicial review established under the APA.

This Court hence concludes that the individual Defendants' acts, taken together, do not fall outside the bounds of the APA merely because they were allegedly motivated by improper goals.  This Court still must consider whether the particular acts that the Plaintiffs allege as the basis of their *Bivens* claim are redressible under the APA.  This Court has identified two primary allegations that seem to form the core of the Plaintiffs' *Bivens* action.  These allegations are 1) that the individual Defendants improperly ordered reductions in the size of the SGA's cattle herd; and 2)  that the individual Defendants wrongfully excluded Plaintiffs from the Dry and Davis

pastures, which traditionally had been included within the Sacramento Grazing Allotment, and committed numerous procedural improprieties in reaching this decision.

This Court finds that the USFS's imposition of reductions in the SGA's herd size constituted an agency action under the APA. First, as the individual Defendants point out, the Plaintiffs concede in their response brief that herd reductions would be agency decisions falling within the category of "agency action" were it not for the unlawful objectives driving the reductions. (Response at 4). However, this Court concluded above that the APA may govern challenges to agency decisions that are based on allegations of improper motives.

Second, the Plaintiffs themselves have brought claims under the APA over the USFS's orders that the SGA reduce its herd size. The Plaintiffs' Second Claim for Relief asserts that the individual federal Defendants violated the APA when they ordered the SGA to cut its herd by 125 head of cattle on June 1, 2000 and when they ordered the SGA to cut its herd by an additional 98 head August 2, 2000. The Plaintiffs' Fourth Claim for Relief charges that the individual federal Defendants violated the APA when on September 8, 2000, Defendant Ray Kingston imposed a 40 percent reduction in the SGA's herd over a two-year period as a sanction for the Plaintiffs' refusal to comply with the August cut. The Plaintiffs' reliance on herd-size reduction as agency actions, for purposes of their APA claims, implies that the Plaintiffs' recognize that the reductions meet the definition of "agency action" under the APA.

Third, although the individual Defendants do not offer a detailed analysis of how the agency decisions concerning herd-size reduction fit within the statutory language of the APA, this Court finds that the decisions do meet the APA's defintion of "agency action." As noted above, the APA provides that "'agency action' includes the whole or a part of an agency rule, order,

license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13). An "order," under the APA, "means the whole or a part of a final disposition, whether affirmative, negative, injunctive, or declaratory in form, of an agency in a matter . . . including licensing." 5 U.S.C. § 551(6). In this case, the individual Defendants' decisions with respect to the SGA's herd size were orders pertaining to a licensing matter. The term "'license' includes the whole or a part of an agency permit," 5 U.S.C. § 551(8), and "'licensing' includes agency process respecting the grant, renewal, denial, revocation, suspension, annulment, withdrawal, limitation, amendment, modification, or conditioning of a license.'" 5 U.S.C. § 551(9). Here, the USFS modified or limited a license-- the SGA's grazing permit-- by reducing the number of cattle allowed to graze under the permit.

      This Court also concludes that the USFS's denial of the SGA's requests for access to the Dry and Davis pastures meets the definition of "agency action" under the APA. In their First Claim for Relief, the Plaintiffs challenge the USFS's exclusion of the SGA from the Dry and Davis pastures under the APA. The Plaintiffs allege that in reaching this decision, and in conducting an appeal on this issue, the individual Defendants engaged in unlawful procedural practices, including wrongfully excluding evidence favorable to the Plaintiffs. As in their herd reduction claims, the Plaintiffs do not explain why this instance of decisionmaking would be considered an agency action in the context of their APA claim, yet not an agency action in the context of their *Bivens* claim. In addition, the individual Defendants' determination that the Dry and Davis pastures are not included within the allotment covered by the Plaintiffs' grazing permit amounted to a "final disposition . . . of an agency in a matter . . . including licensing." Thus the decision falls within the statutory definition of an order, and it constitutes an "agency action" under the APA.

While finding that the herd-size reduction and the decision as to the Dry and Davis pastures were "agency actions," this Court believes that it lacks sufficient information to conclude at this time that all of the administrative decisions cited in the Plaintiffs' Amended Complaint are "agency actions" within the APA's definition. This Court finds the individual Defendants' statement that the USFS employees' decisions are agency actions because they "all indisputably arise out of and relate to the authorization of SGA's grazing activities under its grazing permit" to be too broad and non-specific. (Reply Memorandum in Support of Individual Federal Defendants' Motion to Dismiss Third Claim for Relief, at 4). Some agency decisions relating to a grazing permit could conceivably not fit within the definition of "agency action" under the APA. Even assuming that some of the alleged agency decisions in this case failed to rise to the level of "agency actions," though, it is not clear that the Plaintiffs have set forth these more minor decisions as themselves forming the basis of the *Bivens* claim. Rather, with some allegations regarding minor decisions, the Plaintiffs seem to be developing a context for the more significant agency activities, or using smaller-scale decisions as illustrations of the bias and procedural flaws that purportedly characterized the Defendants' process of making the decisions as to herd-size reductions and access to the Dry and Davis pastures. For example, in alleging that the individual Defendants imposed a grazing rotation schedule that led to overgrazing, the Plaintiffs seem to contend that the Defendants took such actions in order to facilitate their efforts to cut the Plaintiffs' herd size.

The parties should, therefore, provide additional information about other agency decisions that the Plaintiffs contend are not addressable under the APA as a part of their *Bivens* action. If

13

the Plaintiffs believe that agency decisions other than those regarding herd-size reduction and the Dry and Davis pastures were administrative decisions that entitle them to relief, by not later than June 20, 2001, Plaintiffs must file[5] and serve a supplemental brief which (1) sets forth an enumerated list of each separate agency decision that Plaintiffs allege was a part of a plan to destroy their ranching operation; (2) explains how each agency decision deprived Plaintiffs of a constitutional right; and (3) analyzes why each decision does not fall within the APA's definition of "agency action."  Defendants must file their supplemental response to Plaintiffs' supplemental brief by July 2, 2001 and Plaintiffs may, if they wish, file a reply to Defendants' supplemental response by not later than July 10, 2001.

IT IS THEREFORE ORDERED that the individual federal Defendants' Motion to Dismiss Third Claim for Relief in Sacramento Grazing Association's First Amended Complaint in Consolidated Action (Doc. No. 84) is granted in part at this time as to the agency decisions concerning herd-size reduction and the Dry and Davis pastures.  This Court will render a decision on the undecided issues addressed in the Defendants' motion after the parties have submitted their supplemental briefs.

_____
CHIEF UNITED STATES DISTRICT JUDGE

---

[5] The motion package rule, D.N.M.LR-Civ. 7.3(a)(5), will be waived as to this supplemental briefing.