IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**FOREST GUARDIANS,**

    Plaintiff,

v.                                                                                                                                             CIV. No.  00-490  JP/RLP &

**UNITED STATES FOREST SERVICE and
ANN VENEMAN, in her capacity as
Secretary of Agriculture of the United States,**

    Defendants,

**SACRAMENTO GRAZING ASSOCIATION,
CALVIN BISHOP, SAM FAIRCHILD,
RANDY ELKINS, GRANT MYERS, RICK
and KIM LESSENTINE, ROY HOLCOMB,
and OTERO COUNTY**

    Defendant-Intervenors.

_____

**SACRAMENTO GRAZING
ASSOCIATION, JIMMY GOSS, FRANCES
GOSS, JUSTIN (SPIKE) GOSS, and
BRENNA GOSS**

    Plaintiffs,

v.                                                                                                                           CIV. No. 00-1240 JP/RLP

**UNITED STATES DEPARTMENT OF**                                              (Consolidated)
**AGRICULTURE and ANN VENEMAN, in
her capacity as Secretary of Agriculture of the
United States, UNITED STATES FOREST
SERVICE, DALE BOSWORTH, in his
official capacity as Chief of the United States
Forest Service, REGIONAL FORESTER
ELEANOR TOWNS, in her individual and**

**official capacity, DEPUTY REGIONAL FORESTER/ APPEAL DECIDING OFFICER JAMES T. GLADEN, in his individual and official capacity, FOREST SUPERVISOR JOSE MARTINEZ, in his individual and official capacity, RANGER LARRY SANSOM, in his individual and official capacity, DISTRICT RANGER MAX GOODWIN, in his individual and official capacity, RANGER RICK NEWMON, in his individual and official capacity, and NEW MEXICO STATE GAME COMMISSION and STEPHEN DOERR as Commissioner of the New Mexico State Game Commission,**

   **Defendants.**

## MEMORANDUM OPINION

  On January 2, 2001, Defendants Eleanor Towns, James T. Gladen, Jose Martinez, Larry Sansom, Max Goodwin, and Rick Newmon ("the individual federal Defendants") filed a Motion to Dismiss Third Claim for Relief in Sacramento Grazing Association's First Amended Complaint in Consolidated Action (Doc. No. 84).  I examined the individual federal Defendants' motion at length in a Memorandum Opinion and Order filed June 8, 2001 (Doc. No. 133) and granted the motion in part.  This Memorandum Opinion addresses the remaining issues raised in the individual Defendants' motion.  I have determined that the motion should be granted in full.

  The Plaintiffs Sacramento Grazing Association, Jimmy Goss, Frances Goss, Justin (Spike) Goss, and Brenna Goss (collectively, "the SGA") allege that the Defendants have made a range of improper administrative decisions with the goal of destroying the SGA's ranching operation.  The Plaintiffs' Third Claim for Relief is a *Bivens* action– a suit against federal employees for money

2

damages arising from alleged violations of the United States Constitution.

In arguing that the Court should dismiss the Third Claim for Relief, the individual Defendants contend that the Administrative Procedure Act (APA), 5 U.S.C. §§ 551-706, provides an alternative remedy for the injuries alleged by the SGA, and that the APA thus precludes the SGA's *Bivens* action. The individual federal Defendants maintain, and I accepted in my prior Memorandum Opinion and Order, that if the APA provides a remedy for addressing a particular agency decision, the Plaintiffs cannot use that decision as the basis of a *Bivens* claim. See Memorandum Opinion and Order of June 8, 2001, at 8. Hence, in making a determination as to the individual federal Defendants' Motion to Dismiss, the relevant question became whether the United States Forest Service (USFS) decisions challenged by the SGA constituted "agency actions" within the statutory definition in the APA. I discerned that two alleged decisions seemed to form the core of the SGA's *Bivens* claim– the USFS's imposition of reductions in the SGA's herd size and the USFS's exclusion of the SGA from the Dry and Davis pastures. I concluded that both of these core decisions fit within the APA's definition of "agency action." See Memorandum Opinion and Order of June 8, 2001 at 11-12.

I noted that in addition to the herd size reduction and the denial of access to the Dry and Davis pastures, the SGA had challenged a range of other, more minor USFS decisions. Stating that I lacked sufficient information to evaluate whether these minor administrative decisions constituted "agency actions," I directed the parties to submit supplemental briefs on the issue. I ordered that:

> Plaintiffs must file and serve a supplemental brief which (1) sets forth an enumerated list of each separate agency decision that Plaintiffs allege was a part of

3

> a plan to destroy their ranching operation; (2) explains how each agency decision deprived Plaintiffs of a constitutional right; and (3) analyzes why each decision does not fall within the APA's definition of "agency action."

Memorandum Opinion and Order of June 8, 2001, at 14.

The Plaintiffs have failed to comply with my instructions.  First, the Plaintiffs' Supplemental Brief (Doc. No. 140) and Reply Brief (Doc. No. 149) consist largely of repeated statements of a premise that I explicitly rejected in my Memorandum Opinion and Order of June 8, 2001– that allegations of improper motives and agency bias take an administrative action outside of the bounds of APA reviewability.  Memorandum Opinion and Order of June 8, 2001, at 10.

Second, neither the Plaintiffs' Supplemental Brief nor their Reply contains any analysis of the statutory language of the APA.  The Plaintiffs assert that all of the minor decisions together made up a pattern of day-to-day conduct which harmed the SGA's ranching operation, and that these day-to-day decisions are unreviewable under the APA.  The Plaintiffs omit the step of citing 5 U.S.C. § 551(13), in which "agency action" is defined, and explaining how under this language even one of the challenged "day-to-day" decisions falls outside of the statute's coverage.  Merely asserting that the decisions are of a type unreviewable under the APA, or labeling decisions "day-to-day," is not sufficient to satisfy the terms of my order for

supplemental briefing.[1]

Third, the Plaintiffs have not set forth a theory linking the more minor decisions to constitutional harms distinct from the alleged harms resulting from the herd-size and Dry and Davis decisions.  For example, after a thirteen-page description of alleged improprieties in the USFS's setting of stubble-height requirements, the Plaintiffs state that "the 'actions and decisions' of the Defendants pertaining to the concealment and failure to disclose the material information pertinent to the validity of the imposition os a 4" stubble height requirement to protect the [owl] .

---

[1]     Plaintiffs cite three cases in which district courts have determined that certain types of agency decisions or activities do not fall within the APA's definition of "agency action."  The facts of these cases are not so similar to the present case as to relieve Plaintiffs of the burden of applying the APA definition to their own allegations. In *McClellan Ecological Seepage Situation v. Cheney*, 763 F.Supp. 431 (E.D. Cal. 1989) the plaintiffs attempted to sue under the APA for the Air Force's alleged failure to comply with state pollution laws at the McClellan Air Force Base.  In stating that the APA does not apply "to the day-to-day operations of a federal facility," the Court seemed to emphasize that waste disposal decisions were not actions taken in the context of McClellan's administrative authority.  *Id.* at 440.  It is not clear how this case supports the Plaintiffs' assumption, for example, that the USFS's setting of a grazing rotation schedule represented a day-to-day decision not covered under the APA.
In *Pharmaceutical Manufacturers Association v. Kennedy*, 471 F.Supp. 1224 (D. Md. 1979), the district court addressed the objection of an association of prescription drug manufacturers to the Food and Drug Administration's plan to publish a list comparing brand-name and generic drugs.  Holding that the publication would not constitute an "agency action" under the APA, the court stressed that "no agency is ordering any [association] member to engage in or refrain from any action.  Nor is any agency doing anything which is binding on the parties."  *Id.* at 1231.  This case is distinct from the present case, in which the day-to-day decisions challenged by the SGA were intended to make the SGA engage in or refrain from action.
In *La Compania Ocho v. United States Forest Sevice*, 874 F.Supp. 1242 (D.N.M. 1995), the Plaintiffs alleged that an agency had initiated groundless criminal investigations and had made unfounded accusations of Sherman Act violations in retaliation for the Plaintiffs' challenging of agency actions.  The Court found that these allegations "are not characterizable as 'agency action.'"  *Id.* at 1249.  Again, this case does not seem to provide particular support for the Plaintiffs' position in the present case.  The issue of whether such activities as setting grazing rotation schedules, which at least appear to relate to the USFS's task of administering grazing permits, fall under the APA, seems to be a much closer question than whether the initiation of retaliatory criminal investigations fits within the APA's "agency action" definition of a "rule, order, license, sanction, [or]r relief."  5 U.S.C. § 551(13).

5

. . deprived the Goss' [sic] of their property by cutting the allotted number of cattle they were otherwise entitled to graze and thereby causing injury to their business." Supplemental Brief in Response to Memorandum Opinion and Order of Chief United States District Judge James A. Parker, at 17. Under the Plaintiffs' analysis, the harm resulting from the stubble height requirements was that the requirements contributed to the imposition of herd-size cuts. However, I have already determined that the herd-size reductions cannot form the basis of a *Bivens* claim.

Given the significant deficiencies in the Plaintiffs' supplemental briefing, this Court finds that the remaining portion of the individual federal Defendants' Motion to Dismiss Third Claim for Relief in Sacramento Grazing Association's First Amended Complaint in Consolidated Action (Doc. No. 84) should be granted.

_____
CHIEF UNITED STATES DISTRICT JUDGE